541 Stryker v. Zimmer May it please the Court, the District Court's award of the maximum possible enhanced damages was flawed as a matter of law. First, the District Court failed to apply Reed's instructions to give weight to factors that are mitigating and ameliorating. And second, the Court flatly misapplied several of the Reed factors, including concealment, closeness of the case, motivation for harm, and duration of the misconduct. Here's the concern I have. This is the totality of the circumstances analysis. This case has been around and back and forth for a long time, as we both know. And what you're saying is you're agreeing there's going to be enhancement. And now we're talking about whether the enhancement ought to be three times or two and a half times or one and a quarter times. And whereas maybe, maybe not any of us sitting as a District Court might shave off some amount of money from the three times, it's really hard as an appellate level for us to start scrutinizing what percentage the District Court should have applied, even if your argument is they went too far. But how far is too far? And how much does that equate to? And what are we supposed to do with that? So Chief Judge Prost, our position is, at least with respect to this panel, we are not disputing the subjective willfulness finding. The question is how much enhanced damages are appropriate. We're not suggesting what the right number is. We're not asking this court to come up with the right number. That is the function of the District Court. It is the function of this court. And I would submit a very, very important function in the light of HALO to clarify and correct the District Court's confusion on the meaning of the Reed factors in order to provide lower courts with guidance. We have a situation, and this case well illustrates it, in which different District Courts around the country looking at the same facts are applying the Reed factors in diametrically different ways. Given the Supreme Court's broad language in HALO about the exercise of discretion and the totality of the circumstances, is there a mechanical application of the Reed factors that's even necessary? So no one has suggested, including this Court's opinion in Reed, that a mechanical application is appropriate. What Reed said and underscored was that, number one, and HALO underscored it, that treble damages are reserved for the, quote, worst of the worst. Number two, that to ensure adequate appellate review by this Court, the District Court is obligated to explain the basis for the award, particularly where the maximum amount is imposed. And third and most important, the Court must consider all of the circumstances, including factors that are mitigating or not mitigating. Now, in this case, the record is filled with mitigating factors. The District Court treated Zimmer as if it was a company that intentionally infringed known patents, concealed its sales, ignored infringement letters, and was unable to present reasonable defenses when sued. When, in fact, Zimmer launched its product before the patents in suit even issued, it openly sold its product for 10 years with the patent holder and its principal competitors' knowledge without a whisper from Stryker or even a suggestion that it was violating any of its patents. And when it was sued, it came up with what this Court has now twice said were reasonable legal defenses to all of the claims of all three of the asserted patents. And this is... Why is anything that we have said about those defenses meaningful when those decisions were vacated? Well, this Court issued a decision following remand in which the Court said, OK, our previous decision vacated the Enhanced Damages Award because of the failure of proof of objective reasonableness, and that's no longer a factor. But we will reaffirm the fact that it was not unreasonable for a jury to have concluded that there was infringement and the patents were not invalid. But this Court reiterated as to each of our defenses and at the outset of its opinion that our positions on those dispositive issues were reasonable. And that by definition shows that the District Court erred in the application of the closeness of the case factor. The case was close. Really? Aren't we trying to rewrite what the Supreme Court told us in HALO? I mean, that what? We should have sent this back and the District Court should have done what? I can't do one-time damages because the Federal Circuit or I conclude there were objectively reasonable post hoc litigation positions taken. Your Honor, what the District Court should do is exactly what this Court told the District Court to do in the WCM case, which is it went through and analyzed the District Court's application of the Reed factors. It explained why, with respect to certain of those factors, the District Court had erred as a matter of law and it remanded to the District Court to reconsider the availability and amount of enhanced damages in light of this Court's articulation of what those Reed factors mean. And I can't underscore how important it is. We have District Courts all over the country, some of which, like this Court, may never see another enhanced damages case. And they are demonstrably applying the same factors quite differently with a consequence. I mean, here we had a whole jury trial. There was a determination. We paid our $90 million in compensatory damages. And on the basis of the District Judge's application, I would say misapplication, of the Reed factors, we have what I believe is the second largest enhanced damages award. I mean, when we're talking about punitive damages, it is, yes, these are all subject to discretion. But as HALO says, particularly with reference to Judge Friendly's opinion in discretion about discretion, that it is the function and office of this Court to make sure that District Courts around the country, and frankly, litigants that are deciding whether or not to contest a claim of infringement on assertedly valid patents, understand what's facing them, at least understand what the rules of the road are. But aren't you just asking us to take the Reed factors and turn them into the exact kind of strict test that the Supreme Court took away from us when they took away the discretion test that we did before? The Supreme Court said, and very firmly, that this is something that is an act of discretion by the District Court, because the District Court's on the ground. The District Court knows what happened. You talk about some of these defenses that you say weren't so bad, but the District Court pointed out there were tons of defenses that were horrible and completely weak. And so why isn't the District Court allowed to consider all of that? Well, here is, I mean, I'll answer your question with respect to closeness of the case and then point out some of the other Reed factors that we think just have to be clarified by this Court. With respect to the closeness of the case, with respect, we think, and we think this Court's decisions in a number of its prior cases indicate that if you have — I mean, of course, there are, you know, a dozen or two dozen asserted claims presented in this case as to which we had lots of defenses of claim construction and non-infringement. That's inevitable when you're talking about a dozen or two dozen different litigate patent claims across multiple patents. The dispositive question is whether or not, with respect to every claim of every asserted patent, we had a defense which, although ultimately unsuccessful, was close and was reasonable. And that's what determines whether the case was close or not. We could have had 10 defenses or 10 claim construction arguments, but if one of them won, we would have won — if one with respect to each of those patents had won, we would have had no liability. So you're saying that post-HALO, in order to assert or to award these damages, one has to do an objectively reasonable determination? No. First of all — Right, because that's exactly what the Supreme Court said. Of course. Of course. What this Court has said in multiple cases after HALO, including Western Gecko and Polera, and I believe also in HALO and Vicious Striker itself on remand, is while objective reasonableness is no longer an absolute defense, the strength of the claims, the objective reasonableness factor, is nonetheless important as one factor among many in determining whether enhanced damages are appropriate and how much. And the point here is that we have a situation in which the district judge found, applied the maximum penalty as if we were, as HALO explains, the wanton malicious pirate who intentionally infringes another's patent with no doubts about its validity, no notion to defense, for no purpose other than stealing the plaintiff's business, when the facts of this case are utterly different. Just to mention a couple of the other errors on the Reed factors, the district court found that factor number eight, motivation for harm, favored enhanced damages because we were competitors. This Court in Reed and the district court in Power Integrations makes clear, and we think it's correct, that the fact that the alleged infringer and the plaintiff are competitors is insufficient to constitute motivation for harm absent misconduct. For concealment, there is no question in this case that we sold our product openly for 10 years, 10 years after they obtained 66 copies of our product and tested it, without one whisper that they even thought we were infringing. The district court said, well, I'm going to find the concealment factor satisfied, and by the way, the litigation conduct satisfied, because there was a single discovery dispute that spanned a few months in which the district court never even knew about until post-trial briefing on enhanced damages, and I'm going to find that that discovery dispute satisfied concealment. And this is where I started, which is one of your arguments, your main underlying argument is that enhanced damage is fine, but this last number three times ought to be reserved for the worst of the worst of the worst, and there's not a sufficient finding here that this was the worst of the worst, or not a correct finding. I don't know what to do with that, because if we send it back and the district court says, okay, federal circuit said three times is reserved for the worst of the worst of the worst, this wasn't the worst of the worst of the worst, I'll shave off $2 million, or $3 million, and then it comes back here, and you come up to us and you say, well, it wasn't the worst of the worst, and you didn't shave off enough, and so you ought to send it back again. How do we do this at the appellate level? This is exactly, is it not, what the Supreme Court was avoiding our having, our doing, by giving the discretion to the district courts. Chief Judge Prost, the Supreme Court understood, and its reference to the two centuries of case law and this Court's function in reviewing the application of discretion under the factors requires that this Court clarify what those factors mean. If concealment means, as we think, concealment during the alleged period of infringement, and not one minor discovery dispute that the district judge didn't even know about and never prejudiced the defendant, you should say so, because he used the Supreme Court. The Supreme Court said that it is an exercise, it is reserved for the worst, the wanton, malicious pirate, and as this Court has repeated, I think, in three or four cases post-HALO, that requires a district court to adequately consider all of the facts and circumstances, including those that are mitigating or ameliorating. You have to explain yourself. You have to show your work. But we have never said that the read factors are either required as a consideration. We've said courts can, but don't have to consider them. And then when they do, we haven't said that there's a precise formula for those read factors. We're not arguing, with respect, a precise formula. We're arguing a situation in which the read fact, multiple read factors were demonstrably applied incorrectly. This single discovery dispute, with no prejudice and no judge involvement, caused not only the award of attorney's fees, but was the sole reason cited for satisfying two of the read factors. The duration of the misconduct, there are, this Court has not resolved it, but as we point out, a number of district courts have properly concluded, in our view, that the duration of misconduct is the period of time in which the defendant had noticed that it was infringing. What the lower court said is, nope, I'm going to find that the duration of the misconduct was the entire ten years of the infringement period, a period in which even Stryker, our competitor, having tested the products, never wrote us a letter, never called, never suggested that we were infringing these patents. The meaning of those read factors has got to be uniform. It's got to be explicated. It's then up to district judges to exercise their discretion and consistent with read and HALO, write an opinion that explains how they resolved, maybe not all of the factors, but in the case in which the read factors are argued both pro and con with respect to the availability, vel non, of enhanced damages and the amount, it is, yes, it is incumbent on the district court to explain the application of the factors alleged to be present or alleged not to be present and explain to this court why it is so that, notwithstanding the district court's discretion, there is meaningful appellate review. May I reserve the appellates of my time? May it please the court. The jury in this case found subjective willfulness and this court has already affirmed that ruling. The district court here did not abuse its discretion in awarding trouble damages and fees for Zimmer's willful infringement. This is the second time the district court has considered all of these issues and come to the exact same conclusion. So after living with this case since 2010, presiding... What if we were to observe or conclude, as Mr. Waxman points out, that the district court's analysis with respect to the four read factors was just plain wrong? What do we do with that? Well here, it's important to remember that the question here is whether there's been an abuse of discretion, not whether this court would have found something else. This court should not substitute its judgment for the district court here. Sure, but if the district court is using the read factors, even if it's not required to, if that's the framework and we conclude that some of those decisions under the framework are just flat out wrong, then how are we to know whether the court would have came up with the same damages award if he had corrected those errors? I think in this particular case, the district court was quite adamant that looking at the totality of circumstances, and the district court said that Zimmer's overall conduct was a case of egregious piracy. And I think it's clear that this court, or I'm sorry, the district court found all nine read factors favored substantial enhancement, and then went so far on remand as to say that Zimmer is precisely the type of egregious infringer that the Supreme Court had in mind when it relaxed the Seagate standard. So here, Zimmer's telling you about certain factors that it views to be mitigating in this case, but leaving out the facts that tell the rest of the story. So with respect to copying, for example, there's been deliberate copying found by the district court here. And while it did take place prior to the issuance of the patents, what Zimmer doesn't say is that it was actually aware of Stryker's patents shortly after issuance. It admitted to knowledge shortly after issuance, and well before the damages period started in this case in December of 2004. So the knowledge of the patents was in 2000 and 2001, and worse, Zimmer actually tried to get a patent application, or tried to get a patent on its copycat Pulsivac Plus product. Filed its application with the Patent Office, and it was rejected by the Patent Office as unpatentable over Stryker's Interpulse patent, which was- But what are we to make of the fact that when you say it was, they knew about the patent, they continued their act of producing these materials, but you're the only two in the market, right? Yes, they're the two major competitors. That they were producing, and yet there was no letter, no demand, no nothing. Well here I think the focus in enhancement determination is really on Zimmer's conduct, the egregiousness of Zimmer's conduct. And with respect to the timing aspect- Well, some timing and circumstances could take into consideration, and should take into consideration the other side, shouldn't it? Of course. And the District Court did in fact take that into consideration, and more importantly, at Zimmer's insistence, the jury considered the timing issue as part of the willfulness determination and found against Zimmer. Now the District Court specifically, when looking at the totality of circumstances for purposes of enhancing damages here, took into account the alleged delay by Stryker. And so at Appendix 10, Note 6, the District Court said, any delay by Stryker, and this Court previously determined that the delay in this case is insufficient to support Alachi's defense, was not the cause of Zimmer's infringement. Zimmer is responsible for its own actions. That's language that mirrors the District Court in Arctic Cat, and this Court affirmed the word of trouble damages in that case very recently. With respect to objective reasonableness, the District Court specifically considered whether or not it needed to do so. It specifically considered this Court's statements with respect to Zimmer's four defenses that it brought up on appeal last time around, and still found that Zimmer's conduct, when looking at the totality of circumstances, was still a case of egregious piracy warranting fully enhanced trouble damages and fees. This isn't a de novo review of the facts here. The District Court and the jury have already found the relevant facts, and they were supported by clear and convincing evidence under the Seagate standard, and there's certainly enough to support the preponderance of the evidence standard under HALO. So back in 2013, in its original order on post-trial motions, the District Court actually set forth a narrative of the facts as he saw them, and as was presented to the jury. And so that's at Appendix 86, 42 to 44. We start out with Zimmer found, Zimmer praised Stryker's invention as being pioneering. That was admitted at trial. Zimmer referred to Stryker as the market innovators. Zimmer tried to come up with its own design and did, in fact, put out a product that was not infringing called the Veripulse, but it failed miserably in the marketplace. And then what happened is Zimmer was afraid that it would be eliminated from the market because of its inferior products, and according to the District Court, Zimmer then embarked on a course of conduct that was high risk, high reward. They wanted to compete immediately and aggressively in the pulse lavage market and opt to worry about the legal consequences later. According to the District Court, Zimmer then handed its inexperienced contractor, HM Design, a copy of Stryker's product and said, essentially, make one for us. Zimmer made prototypes using Stryker parts. Zimmer's own witnesses admitted to copying at trial, and the District Court found that Zimmer's resulting pulse of F plus was largely indistinguishable from Stryker's products. That's why the jury and the District Court found that deliberate copying does, I shouldn't say the jury found this, but the District Court certainly found that that supports a substantial enhancement here. Do you agree that District Courts are sort of all over the board in how they apply the read factors and that there needs to be some guidance regardless of how we come out? Well, I think if we've learned anything from HALO, is that there is no rigid formula here, and these are all very fact-specific circumstances. The District Courts, I don't necessarily agree that they're all over the board here. It's just every case is going to have its own special circumstances. And I do want to at least point out with respect to some of the read factors that Zimmer's counsel addressed. For example, the concealment factor, factor number nine. I think Zimmer is looking for a very narrow read of that particular factor, but it's not intended to be so narrow. In fact, the read factor itself says whether defendant attempted to conceal its misconduct, not whether the defendant attempted to conceal its sales. Further to that, this Court, in writing a read in the first place, cited to a case called damages were supported in part by findings that the defendant had failed to preserve its records and failed to cooperate as it should at trial on the issue of damages. So in other words, it has nothing to do with concealing your sales or concealing your infringement. It's something else. It's read broader. Same thing in Arctic Catch. What about the double-counting argument? I mean, basically, he said this is exceptional. You get travel damages. This is exceptional. You get attorney's fees. Why isn't that double-counting? Well, it's not double-counting because by arguing double-counting, that's assuming that there's some specific value as to each particular circumstances. But for both 284 and 285, the court has been directed by the Supreme Court to look at the totality of circumstances. So there's not anything that's been deleted from there. The Supreme Court isn't saying, well, if you look at one factor, then you can't consider it for something else. It's not a mathematical formula. And with respect to the troubling of the damages, the question is whether the district court abused its discretion in awarding travel damages, not whether some other amount could have been awarded. Here, contrary to Zimmer's argument, there's no long-standing mandate that says travel damages are only for the very worst possible offenders that you can imagine. There's nothing in Section 284 or in HALO that suggests that it's only for the worst of the worst. And in fact, this court has recognized that and has affirmed several cases where travel damages have been awarded on less than all read factors. Most recently in Arctic Cat, that was seven of nine read factors. In Ovention Toys, eight of nine read factors. Prior to HALO, I think on page 21 of Stryker's brief, we've listed several cases like Amstead, for example, I think was four read factors. So I think that shows that there's not some kind of formula that should be applied. This is a discretionary determination for the district court to make. Now, with respect to objective reasonableness, I think there's been an assumption that if you have an objectively reasonable defense, necessarily that means the case is close. And I don't think that's true. And I think that's what the district court was saying here when really considering what this court said in the first place about objective reasonableness, but then looking at that in the context of the entirety of the case. So this is a case with three patents, 21 asserted claims. Zimmer lost on claim construction on every single one of the claim construction disputes. Zimmer lost on summary judgment of 20 of 21 claims, literal infringement. So that's something that's fairly rare in a patent case. Zimmer lost on all the remaining issues at trial. Zimmer lost on all 15 post-trial motions. So this is not a case of there's an improper scorecard, but certainly the district court was allowed to consider that Zimmer didn't prevail on a single issue in the case. The case was not close. With respect to motivation for harm, Mr. Waxman, again, was looking at this factor in a very narrow way. The district court wasn't just saying, hey, these guys are competitors, therefore there should be trouble damages. Obviously, these factors should not be viewed in a vacuum, but rather as part of the totality of the circumstances. Here, Zimmer wasn't just a competitor. We know that right from the start, as I said, Zimmer noticed that Stryker had a pioneering invention. It was a market innovator. It tried to come out with its own product. It failed, and it decided to copy. Copying is not legitimate competition. That was not appropriate behavior by Zimmer, and that factor does support a substantial enhancement. So here, the district court carefully followed the Supreme Court's directive. Would you recognize, this goes to kind of the policy question that Mr. Waxman threw out there, that under the abuse of discretion standard, there could have been a district court judge somewhere else or even in the same district that would have looked at this and just doubled the award, right? I think that's certainly possible. And if you came in and tried to challenge that, it's not likely that we would reverse and say, no, you need three times. So we're left with the situation under the abuse of discretion standard where it's not a perfect world that every potential infringer or someone can go to the courthouse and those might be good goals so that everybody can know what the likely outcome is at the money at stake. But you agree, right? I mean, your view is that that's just not the way the system's set up, that we're invariably going to have district different amounts of variation in terms of the amounts applied, even in similar, very similar circumstances. I think so. And I think that it's probably quite rare that you'd ever have circumstances that are precisely the same from case to case. And that's the whole point of the Supreme Court saying that the district court is really in the best position to make that determination because it's been living with the case for a long period of time. And so there could be a situation where someone is just as egregious as Zimmer, but maybe they're very small and there's a determination that, well, we don't want them to go bankrupt. So we're not going to, even though they are the worst of the worst, we're not going to trouble damages because of that. So there's certainly factors that the district court in its discretion is allowed to make that determination. And isn't this the case where the Supreme Court said that they should look at their own experience or comparable experience in other cases? Absolutely. The Supreme Court did say that in the concurrence. And every court is going to have different experiences against which to compare, right? Yes, I think so. So if this court does not have any further questions... Just a few quick points. Counsel is underscoring the fact that, well, this wasn't a close case because we lost on all issues. That's the price of admission to the enhanced damages question. If you don't lose on your issues, we're not going to have a question of enhancing damages. If, you know, on the notion that this wasn't a close case because we lost all of our claim construction issues, this court has already written two opinions on this. I don't understand that point. Because you could win a lot of claim construction points. You could even win a summary judgment and end up losing a trial in faith of willfulness findings. So you could still face enhanced damages. My point is, yes, you have to lose on the issues first in order to... But not on all... But not on every single issue. But just to take the issues, for example, you know, the issue that this court is familiar with was, did we, you know, was the motor, which is in the nub of the barrel of this, in fact, in the handle between the top of the handle and the bottom? The other, which was a focus of the oral argument the first time this case was here, is whether, in fact, we have a device that has a distal end capable of receiving the suction and water tubes when we argued that, and this court's opinion actually said, we have the opposite front end where we have two male nozzles, not a female receptacle, as in Stryker's device. The second point I want to make is, yes, we acknowledge that we knew of, at least a paralegal in the company, knew of the 329 and the 807 patents. Knowledge of a patent is not the finding by the court or by the jury that we ever knew or thought that we were infringing these patents. Thinking about duration of the misconduct, right after we were sued, we propounded our defenses. This court has recognized twice that as to every single asserted claim on all three patents, we had reasonable defenses. At a minimum, it was wrong for the court to enhance our damages over that two-year period between the time that we asserted in good faith defenses that this court has twice said were reasonable and the time that we ultimately lost this case. But didn't the Supreme Court of HALO say, if we're looking at willfulness, we should be looking at the period before the case was filed? Well, the point here is, what the Supreme Court said in willfulness, in HALO, is that you do have to take account of the defendant's culpability against the knowledge that the defendant had at the time of the challenge conduct. Now, there's an issue between the time we started selling this device and they tested it and we were sued. That's that ten-year period when there's no finding that we knew we were infringing or thought we were infringing. And then a few months after the complaint was filed in this case, which is the very first time we were on notice of any allegation or suggestion of infringement, we propounded defenses which this court has twice said, although unsuccessful, were reasonable. And at a minimum, the imposition of enhanced damages during that period is an abuse of discretion and an error of law. Now I see my time really has expired, so thank you. Thank you. We thank both sides and the case is submitted.